UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARILYN MARIE KNAK, | No.  2:20-cv-943-KJN |
| Plaintiff, | ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | (ECF Nos. 19, 22) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI the Social Security Act.[1]  In her motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") erred in:  (A) failing to find plaintiff's claimed hand limitations as severe at step two; and (B) failing to properly assess plaintiff's subjective-symptom testimony.  The Commissioner filed a cross-motion for summary judgment, contending that the ALJ's decision is supported by substantial evidence and free from harmful legal error.

For the reasons stated below, the court DENIES plaintiff's motion, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 7, 9, 10.)

**I.   RELEVANT LAW**

The Social Security Act provides benefits for qualifying individuals with an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(A) (Title II); 1382c(a)(3) (Title XVI). An ALJ is to follow a five-step sequence[2] when evaluating benefit eligibility. 20 C.F.R. §§ 404.1520(a)(4) (Title II); 416.920(a)(4) (Title XVI). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities" and for "translating and incorporating clinical findings into a succinct RFC [residual functional capacity]." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020); Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015).

A district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford, 950 F.3d at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld," and the court may not reverse the ALJ's decision on account of harmless error. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020). The court reviews the record as a whole—including evidence that both supports and detracts from the ALJ's conclusion—but may affirm based only on the reasons provided by the ALJ in the decision. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).

---

[2]   The sequential evaluation is summarized as follows:
**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

On May 17, 2017, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability due to lumbar and cervical degenerative disc disease as well as "arthritis everywhere, fatty tumors on nerves and fingers, hypersensitivity to temperature, osteoporosis, depression, nerve damage both arms, and spinal stenosis." (See Administrative Transcript ("AT") 45-46, 150, electronically filed at ECF No. 12.) Plaintiff's application was twice denied, and plaintiff sought review with an ALJ with the help of a non-attorney representative. (See AT 57, 73, 87, 89.) The ALJ held a hearing on May 8, 2019, where plaintiff testified about her symptoms and a Vocational Expert ("VE") testified regarding plaintiff's ability to perform her past relevant work with her current limitations. (See AT 26-44.)

On June 5, 2019, the ALJ issued a decision determining plaintiff was not disabled from her onset date forward. (AT 15-21.) At step one, the ALJ found plaintiff had not engaged in any substantial gainful activity since the alleged onset date of March 11, 2017. (AT 17.) At step two, the ALJ noted plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease. (Id.) Relevant here, the ALJ found minimal evidence of a disability because of plaintiff's hands: only evidence in the record of non-acute cystic changes, a small lipoma on the left wrist, but no other significant findings. (AT 18.) At step three, the ALJ determined plaintiff was not disabled under the listings. (AT 18, citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except she could occasionally balance, stoop, kneel, and climb stairs; could not crouch, crawl, reach overhead; and must avoid hazards such as unprotected heights and dangerous moving machinery." (AT 18.) In fashioning this RFC, the ALJ considered plaintiff's symptoms, the medical evidence, and professional medical opinions in the record. (Id.) Relevant here, the ALJ followed a two-step process in considering plaintiff's subjective symptom testimony. (AT 19.) First, the ALJ found that the claimant's medically determinable impairments—cervical and lumbar degenerative disc disease—could reasonably be expected to cause the alleged symptoms. (Id.) However, second, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting

effects of those symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Id.) Specifically, the ALJ acknowledged the plaintiff's claimed symptoms, including: (i) constant pain; (ii) inability to sit or stand for long periods of time; (iii) difficulty holding a pen; (iv) leg numbness from prolonged walking; (v) inability to sit for extended periods of time; (vi) and inability to lift more than three pounds. (AT 19.) In contrast, other medical examination evidence showed no reduced strength in the upper extremities. (Id.) These medical examinations showed 4+/5 grip and 4+/5 left upper extremity strength, no muscular atrophy of the upper left extremity, and full finger dexterity. (Id.) Additionally, the ALJ found "persuasive" the opinion of Dr. Ali, who performed an in-person examination, because it was consistent with the medical imaging and physical examination findings of other medical providers. (AT 19.) Dr. Ali opined plaintiff "could stand and walk six hours, was not limited in her ability to sit, and could lift/carry 20 pounds occasionally and 10 pounds frequently." (Id.) Further relevant here, the ALJ also found the opinions of state-agency reviewing-source medical consultants, Drs. Acinas and Lee, "persuasive" and "very similar" to Dr. Ali's opinion. (Id.) Yet, the ALJ found Dr. Ali's opinion "more persuasive" because it was derived from an in-person examination. (Id.) Given the above RFC, the functions of plaintiff's past relevant work, and the VE's testimony, the ALJ determined plaintiff was not disabled for the relevant period. (AT 21.)

The Appeals Council denied plaintiff's appeal. (AT 1-3.) Thereafter, plaintiff filed this action requesting review of the ALJ's decision, and the parties each moved for summary judgment. (ECF Nos. 1, 19, 22.)

**III.    ISSUES PRESENTED**

Plaintiff contends the ALJ erred in: (A) failing to properly find her hand limitations as severe at step two; and (B) failing to properly assess her subjective-symptom testimony. Thus, plaintiff requests this court remand for the payment of benefits or for further proceedings. (ECF Nos. 19, 23.) The Commissioner requests affirmance, arguing substantial evidence supports the ALJ's findings. (ECF No. 22.)

///

## IV.   **DISCUSSION**

### A. Consideration of Plaintiff's Hand Impairment at Step Two and in the RFC

**Legal Standard**

At step two, the ALJ is to distinguish between those impairments that are "severe" and "non-severe." See 20 C.F.R. § 404.1520. A "severe" impairment is one that significantly limits the physical or mental ability to perform basic work activities. Id. "An impairment or combination of impairments may be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). When asserting a condition has more than a minimal effect, the plaintiff must provide medical evidence beyond a mere diagnosis and cannot rely solely on symptom testimony. 20 C.F.R. 404.1529(a). However, the step two assessment is a "de minimus screening device to dispose of groundless claims," and the ALJ's conclusion must be supported by the medical evidence in the record. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Even when evidence in the record is "susceptible to more than one rational interpretation," the ALJ's findings are determinative when "supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

**Analysis**

Plaintiff contends the ALJ failed to properly assess her hand impairments as severe. The court disagrees. As the ALJ noted, a May 2016 examination showed some reduced strength in the left arm, but also showed a 4/5 grip strength in the opposing first and second digits, 4/5 extension in left elbow, and 4/5 extension in the left wrist. (AT 19, citing AT 258-60.) The ALJ also noted "other examinations show[ed] no weakness in the upper extremities, and 2018 exams noted 4+/5 grip and 4+/5 left upper extremity strength." (AT 19, citing AT 313, 356, 361.) Plaintiff had no muscular atrophy of the left upper extremity and "her finger dexterity is preserved." (AT 20, citing AT 259 and 315.) The ALJ noted these diagnoses throughout the decision. (AT 18-20.) The ALJ concluded, on the alleged hand impairments, "x-rays revealed only non-acute cystic changes of the bilateral navicular bones with no other significant findings," and that a small, "nontender" 3 cm lipoma was located on plaintiff's left wrist. (AT 18, citing

AT 259, 328, 343.)  These records constitute substantial evidence, and the ALJ's findings of only a "slight abnormality" of plaintiff's left hand, which had "no more than a minimal effect" on plaintiff's ability to perform work activities, was proper.  Barnhart, 433 F.3d at 686.  See 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities.").

Plaintiff argues other of her medical record support her claim.  She primarily points to records from Shasta Community Health Center, where Dr. Freeberg recorded plaintiff's subjective symptoms.  (ECF No. 19 at 7.)  The listed symptoms included:  "weakened hand grip," frequent dropping of cups of coffee, and an inability to "put jugs of milk into her cart at the store."  (AT 345.)  However, the ALJ found this record evidence—including her purported propensity for "drop[ping] things"—as "not entirely consistent with other evidence.  (AT 19-20.) Specifically, the ALJ pointed to imaging results showing no disc extrusion, cord compression, muscle atrophy, or significant weakness in the left hand.  (AT 20, citing AT 259, 313, 356, 361.) Moreover, the ALJ is permitted to discount medical records when they are based on plaintiff's accounts, where the subjective symptom testimony is also properly rejected.  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting an ALJ may reject medical evidence if "it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible").  Furthermore, it has long been the case that "the claimant carries the initial burden" of showing a disability.  Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989); see also, e.g., Pinegar v. Comm'r, 499 F. App'x 666, 667 (9th Cir. 2012) (affirming ALJ's rejection of medical "opinions" as "nothing more than notes summarizing [plaintiff's] complaints" and therefore not physician's actual opinions).  Finally, it is for the ALJ, and not the court, to weigh evidence and resolve conflicts in the record.  Ford, 950 F.3d at 1154.

For these reasons, the ALJ's treatment of plaintiff's alleged hand impairment was not in error and was supported by substantial evidence in the record.  Molina, 674 F.3d at 1110-11.

///

///

B. **Plaintiff's Subjective-Symptom Testimony**

**Legal Standard**

In evaluating a claimant's symptoms testimony, the following analysis is used:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant is not required to show the impairment caused the severity of the symptom alleged, nor required to produce objective medical evidence thereof. Instead, the claimant only need show the impairment could reasonably have caused some degree of the symptom. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (noting the clear and convincing standard is not easy to meet, and is "the most demanding [standard] required in Social Security cases")

Under the clear and convincing standard, the ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (2015). This requires the ALJ to "specifically identify the testimony from a claimant she or he finds not to be credible and . . . explain what evidence undermines the testimony." Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014).

Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony can include a conservative course of care, the failure to follow a prescribed regimen of medical treatment, and inconsistency between the alleged symptoms and the medical evidence of record. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (concluding a favorable response to a conservative course of care undermines subjective testimony about the "disabling nature of [claimant's] pain.) A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. 20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Broadly speaking, a claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

**Analysis**

Here, the ALJ began his analysis of plaintiff's subjective symptom testimony with the oft-repeated statement that while plaintiff's testimony generally aligned with the medical evidence, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AT 20.) The ALJ then summarized plaintiff's hearing testimony, including plaintiff's statements that her hands tingle and "she drops things." (AT 19.) Plaintiff claimed to have "trouble vacuuming and doing yard work," and cannot lift more than three pounds. (Id.) Next, the ALJ extensively outlined the objective medical evidence, the medical opinions, and the course of care prescribed for plaintiff's conditions. (AT 19-21.) The ALJ concluded the principal reasons for discounting the more limiting aspects of plaintiff's subjective symptom testimony were inconsistency with both the medical evidence and doctors' opinions in the record. (AT 19-20.) The ALJ also detailed plaintiff's conservative course of care and portions of plaintiff's own testimony indicating plaintiff had shirked prescribed treatment. (Id.) The question is whether the ALJ's description of plaintiff's symptom testimony and rationale for rejecting it meets the Ninth Circuit's clear and convincing standard. The court finds that it does.

The ALJ primarily relied on a lack of corroborating objective medical evidence to support the decision to discount plaintiff's testimony that plaintiff could not work because of her impairments. See, e.g., Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (clear and convincing reasons to reject subjective symptom testimony can include inconsistencies between claimant's testimony and medical evidence). The ALJ highlighted physical exams that "show[ed] no weakness in the upper extremities," a grip strength of 4+/5, upper extremity strength of 4+/5, and a preserved finger dexterity. (AT 19-20, 313.) The ALJ also emphasized a lack of any muscular atrophy in the left upper extremity—the arm the plaintiff had most complained about. (AT 20, 259.) Further, the ALJ discussed plaintiff's December 10, 2018, bilateral hand x-rays, which revealed only "non-acute cystic changes of the bilateral navicular bones with no other significant findings." (AT 18, 328, 343.) Additionally, a physical exam of the hands shows a "3 cm nodule on the left wrist that was likely a lipoma." (AT 18, 339.) Finally, the ALJ found the

plaintiff's subjective symptom testimony as inconsistent with the medical doctors' testimony regarding the "intensity, persistence, and limiting effects" of her purported symptoms. (AT 19-21.) Dr. Ali concluded plaintiff "could stand and walk six hours, was not limited in her ability to sit, and could lift/carry 20 pounds occasionally and 10 pounds frequently." (Id.) Dr. Ali also noted the severity of her cervical and lumbar spine impairments but highlighted the "intact sensation in the upper and lower extremities and symmetrical handgrip strength" in both hands, but plaintiff could "never crouch or crawl and would be limited in reaching overhead." (Id.) The ALJ also discussed the opinions of doctors Acinas and Lee whose opinions were very similar to Dr. Ali's, except for the conclusion that plaintiff could also "frequently climb ramps/stairs, balance, kneel, and crouch; occasionally climb ladders, ropes and scaffolds, stop, and crawl" and had no reaching overhead limitation. (AT 20-21.) The ALJ found Dr. Ali's opinion "most persuasive" as it was "supported by an in person examination, [was] consistent with [plaintiff's] medical imaging and physical exam findings from other medical providers, and better accounts for limitations described within the [plaintiff's] testimony." (AT 21.)

Even though a lack of corroborating medical evidence is not enough (by itself) to disregard a plaintiff's subjective symptoms, the ALJ also found the conservative course of care and portions of plaintiff's own testimony were at odds with plaintiff's subjective symptom testimony. (AT 24). These are both valid additional reasons to reject plaintiff's statements. The record indicates plaintiff was treated conservatively for ailments. The ALJ pointed out plaintiff had been provided an injection on at least one occasion and had otherwise been recommended physical therapy. (AT 327, 371.) Moreover, the ALJ highlighted plaintiff failed to maintain her prescribed physical therapy, in that she attended only 9 of 18 physical therapy appointments. (AT 20.) These are permissible reasons. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (highlighting the "powerful evidence" cutting against plaintiff's subjective symptom testimony when plaintiff shirks physical therapy, chiropractic appointments, and home exercises, concluding plaintiff's pain was "not severe enough to motivate her to seek these forms of treatment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding claimant's lack of more extensive medical treatment justified ALJ's discounting of severe pain).

For these reasons, the ALJ did not fail in her duty to provide clear and convincing reasons for discounting plaintiff's subjective symptom testimony. Treichler, 775 F.3d at 1102; see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("if the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing"); Morgan, 169 F.3d at 599-600 (providing where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld).

## IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED;
2. The Commissioner's cross motion (ECF No. 22) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court shall issue judgment in the Commissioner's favor and CLOSE this case.

Dated: September 8, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

TO/SD, knak.943